Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are bound by and subject to the provisions of the North Carolina Workers Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer on 28 June 1999.
3. Plaintiffs average weekly wage on 28 June 1999 was $360.00, yielding a compensation rate of $240.00 per week.
4. As of 12 April 2000, plaintiff had returned to work earning the same or greater wages as he earned on 28 June 1999.
 ***********
Based upon all of the competent evidence of record, the Full Commission rejects the findings of fact found by the Deputy Commissioner and enters the following:
 FINDINGS OF FACT
1. Plaintiffs date of birth is 2 September 1956. He is married and has two minor children. He graduated from Broughton High School in 1974. At the time of the hearing before the Deputy Commissioner, plaintiff was five feet, six inches tall, and weighed approximately 300 pounds. Prior to beginning his employment with defendant-employer, plaintiff was employed as a security guard, an assistant manager of a convenience store, a courier, and a truck driver.
2. Plaintiff began his employment as a delivery truck driver with defendant-employer on 10 April 1999. His job consisted of delivering bathtubs, hot water heaters, pipes, and miscellaneous bathroom fixtures to constructions sites, job sites, and subdivisions.
3. On 28 June 1999, plaintiff arrived at work at approximately 8:00 a.m. He was not limping or walking in an unusual manner, and was experiencing no difficulties with his legs or knees. Plaintiffs initial assignment was to deliver two water heaters to different locations in the same subdivision. The heaters were already loaded on plaintiffs truck. When he arrived at the first residential home to deliver the first water heater, the driveway had just been paved, and plaintiff had to carry the water heater on a two wheel hand truck across the yard. It had rained that morning and the yard was very muddy. As a result of the first delivery through the muddy yard, plaintiffs shoes and the step on his truck became muddy.
4. When plaintiff arrived at the location for the second delivery, he slipped as he was getting out of his truck. He was able to catch himself before he fell completely to the ground, but he twisted his right knee. Plaintiff immediately felt an onset of great pain, and stood in the same position for 5 to 10 minutes before attempting to walk. He was eventually able to deliver the second water heater and return to defendant-employers place of business. Plaintiff reported the incident, but the pain in his knee was beginning to subside somewhat and he made another small delivery before stopping for lunch.
5. At lunch plaintiff reported to a co-worker that he had hurt his knee, that the pain was worsening, and that he was uncertain of his ability to continue working. At that time, plaintiff was limping. He returned to defendant-employers after lunch and reported to the warehouse manager who advised plaintiff to go to see a doctor.
6. Plaintiff presented to Doctors Urgent Care in Cary, North Carolina, later the same day. He was diagnosed with a sprained knee and medications and physical therapy were prescribed. He was given a work restriction to work in sedentary positions with limited use of his right leg. Plaintiff returned to Urgent Care on 5 July 1999, when he was reevaluated and given restrictions of no use of his right leg, no climbing or stepping and limited walking.
7. By 12 July 1999, plaintiffs restrictions were to engage in limited use of his right leg in sedentary work. At his final visit to Urgent Care on 22 July 1999, due to the persistence of his symptoms, plaintiff was again instructed to have no use of his right leg, to keep his right leg elevated when possible and to use crutches.
8. Plaintiffs doctor at Urgent Care referred plaintiff to Raleigh Orthopaedic Clinic. On 29 July 1999, plaintiff presented to Dr. Robert Jones. Dr. Jones diagnosed plaintiff with a suspected right medial meniscal tear and pantellofemoral disease, and prescribed medication and a knee sleeve. At the time of Dr. Jones examination of plaintiffs right knee, there was no evidence of an acute fracture, dislocation or mass. Dr. Jones released plaintiff to return to work at light duty, with no running, jumping, stooping, squatting or bending, and a lifting restriction of 10 pounds.
9. At some point after Dr. Jones released plaintiff to return to work, plaintiff attempted to return to work for defendant-employer. He worked for 2 days stocking, cleaning and helping in both the store and the warehouse. After approximately five hours on the second day the pain became unbearable and plaintiff left work. Plaintiff has not returned to work for defendant-employer, and did not work in any capacity until 12 April 2000.
10. On 6 August 1999, plaintiff presented to Dr. Bradley Vaughan at HealthSouth of Cary. At this initial examination, Dr. Vaughn ordered plaintiff to undergo rehabilitative therapy in conjunction with a home exercise program. By 27 August 1999, plaintiff was still unable to work and was experiencing loss of motion and stiffness in his knee. Dr. Vaughan suspected a meniscus tear, and ordered an MRI. After reviewing the MRI results, Dr. Vaughan determined that plaintiff did not have a torn meniscus, and he recommended continued conservative treatment. Dr. Vaughan provided five sets of steroid injections between December 1999 and February 2000. Dr. Vaughn wrote plaintiff out of work during the period of this treatment. The last examination by Dr. Vaughan was on 24 February 2000, and plaintiff was released to return to work as of 6 March 2000.
11. Plaintiff reached maximum medical improvement on 6 March 2000, and retained a 10% permanent partial impairment to his right leg.
12. Based upon his questions about whether plaintiff had mud on his rear end and shoulders, the Deputy Commissioner did not appear to understand that plaintiff never testified that he fell onto the ground. The Deputy Commissioners finding that this claim was not compensable appeared to be premised upon his belief that plaintiffs "knee had become symptomatic before the injury by accident even if it occurred. Further, the testimony of Robert F. McLain, Jr. and Germaine Dan Griffin that plaintiff appeared to be "laboring, limping or walking kind of funny on the morning of 28 June 1999, which was relied upon by the Deputy Commissioner, is accorded little weight by the Full Commission. Having thoroughly reviewed all the evidence of record, the Full Commission reverses the credibility determination of the Deputy Commissioner.
13. Plaintiff suffered an injury by accident on 28 June 1999, which arose out of and in the course of his employment with defendant-employer and caused plaintiff a period of total disability.
14. As a direct result of his injury by accident, plaintiff was totally disabled from 29 June 1999 to 6 March 2000.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 28 June 1999, plaintiff sustained an injury by accident arising out of and in the course of employment with defendant-employer. N.C. Gen. Stat. 97-2(6).
2. As a direct result of plaintiffs work-related injury by accident, plaintiff was totally disabled and unable to work for defendant-employer or any other employer from 29 June 1999 to 6 March 2000. Accordingly, plaintiff is entitled to temporary total disability compensation for that time, with the exception of the 2 days during which plaintiff attempted a trial return to work. N.C. Gen. Stat. 97-29.
3. Plaintiff is entitled to compensation for a 10% permanent partial disability to his right leg. N.C. Gen. Stat. 97-31(15).
4. Plaintiff is entitled to medical compensation for all treatment necessary to effect a cure or provide relief for his work-related injury, subject to the limitations contained in the Act. N.C. Gen. Stat. 97-25; 97-25.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall pay plaintiff total disability compensation in the amount of $240.00 per week from 29 June 1999 through 6 March 2000, with the exception of 2 days during which plaintiff attempted a trial return to work. Said compensation shall be paid in a lump sum and is subject to attorneys fees approved below.
2. Defendants shall pay for all medical treatment incurred by plaintiff which was necessary to effect a cure or to provide relief from his work-related injury.
3. Defendants shall pay plaintiff $4,800.00 in a lump sum in compensation for a 10% permanent partial disability to his right leg. Said payment is subject to attorneys fees approved below.
4. Plaintiffs counsel is entitled to a reasonable attorneys fee of 25% of the compensation awarded in Paragraphs 1 and 3 above. The fee shall be deducted from plaintiffs lump sum recovery and paid directly to plaintiffs counsel.
5. Defendants shall pay the costs of this action.
This the day of May, 2001.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER